# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

United States of America,    )
    )
         Plaintiff,    )
    )
    v.    )    **Criminal Action Number**
    )    **10-00236-CR-W-DGK**
Chris C. Bausby,    )
    )
         Defendant.    )

## Report and Recommendation

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE filed on June 6, 2011 (Doc. 27) by defendant Chris C. Bausby ("Bausby"). On August 29, 2011, the undersigned held an evidentiary hearing on Bausby's motion. Bausby was present and was represented by his counsel, Alex McCauley. The government was represented by Assistant United States Attorneys Sara Holzschuh and Paul Becker. At the evidentiary hearing, the government called seven witnesses, six from the Kansas City, Missouri Police Department (Detective John Straubel, Sergeant Brad Lemon, and Officers Cole Massey, Shawn Oden, Mike Livers, and Blake Brownlee) and one non-law enforcement witness (Eric Haase). Bausby testified on his own behalf as did his son (Cordan Bausby) and his neighbor (Willis Hughes). Additionally, the following exhibits was admitted into evidence: Govt. Ex. Nos. 1-3 [photographs]; Govt. Ex. No. 4-5 [search warrant and affidavit]; Def. Ex. Nos.11-19, 23 [photographs]; Def. Ex. No. 20 [tow lot paperwork]; Def. Ex. No. 21 [motorcycle bill of sale]; Def. Ex. No. 22 [motorcycle invoice]; Def. Ex. No. 24 [tow lot invoice]; and Def. Ex. No. 25 [video recording].

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned

submits the following:

## PROPOSED FINDINGS OF FACT[1]

1. On June 22, 2010, Eric Haase was driving to his home at the conclusion of a work day.  Tr. at 7.

2. Mr. Haase's route home took him through the intersection of 55th Street and Woodland in Kansas City, Missouri.  Tr. at 7-9.

3. At that intersection, Mr. Haase observed a house [5444 Woodland] with a motorcycle and other vehicles in the front yard.  Tr. at 9, 11, 13.

4. The house and yard at 5444 Woodland is surrounded by a fence – a six-foot wooden privacy fence in the back yard and a see-through chain link fence in the front yard.  Tr. at 26.

5. The motorcycle had a "For Sale" sign next to it and there was a phone number on the sign.  Tr. at 13, 17, 21.

6. Mr. Haase recognized one of the motorcycles as his motorcycle[2] which he had reported as stolen to the Independence, Missouri Police Department in April of 2010.  Tr. at 9-12, 15.

7. Mr. Haase called the police and waited at the scene for their arrival.  Tr. at 12.

8. Officers Cole Massey and Shawn Oden with the Kansas City, Missouri Police Department ("KCPD") were dispatched to the scene in response to Mr. Haase's call.  Tr. at 18-19, 45-46.

---

[1] In proposing these findings and conclusions, the Court has been required to make some credibility determinations, particularly as they pertain to the officers' recitation of the facts surrounding the entry on to Bausby's property and the conversations between officers and Bausby.  In making such determinations, the Court considered (1) the demeanor of the witnesses on the stand, (2) the interest the witnesses had in the outcome of the motion, and (3) the opportunity of the witnesses to hear, observe, and recall what was said or done.  In the end, the Court concludes that, in general, where there were conflicts, the officers were more credible witnesses.

[2] Mr. Haase was able to identify the motorcycle due to several alterations that he had made to the bike.  Tr. at 12-13.

9.     When Officers Massey and Oden arrived at the scene, Mr. Haase pointed out the motorcycle that he believed was his and provided the officers with the Vehicle Identification Number ("VIN") for his stolen motorcycle.  Tr. at 13, 20, 46.

10.     Officers Massey and Oden entered the yard by going through a side gate in the chain link fence that enclosed the front yard of 5444 Woodland.  Tr. at 20.

11.     The side gate to the chain link fence was not locked or chained.  Tr. at 13, 20, 34, 42, 47, 74-75.

12.     There were no "No Trespassing" signs on the fence outside the residence at 5444 Woodland, although there was a "Beware of Dog" sign on the fence.  Tr. at 13, 15-16, 21, 26-28, 33, 47, 55-56, 62, 75.

13.     The officers knocked on the door of the residence, but no one answered.  Tr. at 20, 36, 47-48, 52-53.

14.     The officers then checked the VIN on the motorcycle in question with their dispatcher which revealed that the motorcycle had been reported as stolen.  Tr. at 20-21, 34-35, 48.

15.     The officers then confirmed that the VIN on the subject motorcycle was the same number that Mr. Haase was reporting as the VIN on his stolen motorcycle.  Tr. at 21.

16.     Then as the officers were returning to their car and walking down the driveway for 5444 Woodland, they observed in plain sight multiple vehicles in the driveway and that some were missing VINs.  Tr. at 21-22, 48-49.

17.     The driveway for 5444 Woodland was not fenced.  Tr. at 49.

18.     The driveway for 5444 Woodland is a "shared" driveway with the next-door residence.  Tr. at 75.

19.     Officers Massey and Oden (and Officer Mike Livers with the KCPD who had also arrived on the scene by that time) then contacted property crimes detectives with the KCPD.  Tr. at 21-22, 49, 63.

20.     Sergeant Brad Lemon with the KCPD is in charge of the Metro Property Crimes Task Force.  Tr. at 83-84.

21.     Sgt. Lemon was dispatched to 5444 Woodland in response to the officers' initial reporting of the presence of stolen property.  Tr. at 84.

22.     Sgt. Lemon instructed the officers to secure the crime scene.  Tr. at 84-85.

23.     The officers then secured the scene for a future application for a search warrant. Tr. at 49-50, 84-85.

24.     Officer Livers then began running the VINs of the vehicles in the driveway and one [an Oldsmobile Alero] was reported as stolen.  Tr. at 66-67.

25.     Once a scene is secured, officers do not allow anyone to enter onto a property. Tr. at 50, 65.

26.     Subsequently, Officer Blake Brownlee with the KCPD arrived at the scene to assist the other officers.  Tr. at 71-74.

27.     At one point, a man approached Officer Brownlee and identified himself as the neighbor who shared a driveway with 5444 Woodland.  Tr. at 75.

28.     When the neighbor asked to move his vehicle from the shared driveway, Sgt. Lemon allowed him to do so.  Tr. at 86.

29.     At a later point while the officers were still at 5444 Woodland, Bausby arrived and identified himself as the landowner.  Tr. at 23-24, 36, 50, 64, 77.

30.     Bausby was taken into custody for an outstanding warrant.  Tr. at 24, 36, 50, 64, 77.

31.     After being taken into custody, but while still at the scene, Bausby informed the officers that he had paperwork that would prove his ownership of the vehicles on the property. Tr. at 24, 36-38, 50, 64, 68, 77, 80-81.

32.     For reasons of officer safety and because a search warrant was being obtained, the officers refused to permit Bausby to enter the residence so as to retrieve any paperwork.  Tr. at 24-25, 38-39, 50-51, 53-54, 65, 68-69, 77-78, 80-81, 89.

33.     Detective John Straubel with the KCPD is assigned to the Metro Property Crimes Task Force.  Tr. at 93.

34.     On June 22, 2010, Det. Straubel responded to 5444 Woodland at the same time that Sgt. Lemon responded to the scene.  Tr. at 94.

35.     After making his own observations, talking with the officers at the scene, and obtaining a legal description of the residence, Det. Straubel returned to his police station and prepared an affidavit in support of a search warrant.  Tr. at 95; Govt. Ex. No. 4.

36.     Det. Straubel was not aware that Bausby had told officers at the scene that he had paperwork that would prove his ownership of the vehicles on the property.  Tr. at 99.

37.     Later that day, a Missouri judge issued a search warrant for 5444 Woodland based on Det. Straubel's affidavit.  Tr. at 97.

38.     The search warrant was then executed and the ensuing search of 5444 Woodland found a weapon (a 12-gauge shotgun) which forms the crux of the instant indictment against Bausby.  Tr. at 98-100.

39.     Subsequently, it was established that Bausby had lawfully purchased Mr. Haase's stolen motorcycle from a Kansas City tow lot where it was taken after being discovered abandoned.  Tr. at 99-100, 106.

40.     Bausby had no documentation to prove lawful ownership of the Oldsmobile Alero.  Tr. at 100, 109.

## PROPOSED CONCLUSIONS OF LAW

In his MOTION TO SUPPRESS EVIDENCE, Bausby asserts that law enforcement officers

violated his constitutional rights in their actions on June 22, 2010.  Specifically, Bausby alleges:

(1)     law enforcement officers conducted an improper warrantless
        search when they entered his property,[3] and

(2)     the search warrant ultimately obtained by law enforcement officers
        was improperly obtained because the officers failed to disclose
        critical facts.

Without question, individuals possess a privacy interest in their property that is protected

by the Fourth Amendment.  *See*, *e.g.*, *United States v. Gwinn*, 191 F.3d 874, 878 (8th Cir. 2000).

As protection for the citizen from unwarranted government intrusion, the Fourth Amendment

generally requires law enforcement to obtain a court-sanctioned search warrant based on

probable cause before undertaking a search of private property.  *See*, *e.g.*, *Shade v. City of

Farmington, Minnesota*, 309 F.3d 1054, 1059 (8th Cir. 2000).  Those privacy interests are

particularly enhanced when a search of an individual's domicile or residence is at issue.  *See*,

---

[3]     As understood by the Court, Bausby objects to the initial entry on to his property and "search" of the motorcycle VIN primarily because the information gleaned contributed to the probable cause determination for the subsequent search warrant.

*e.g.*, *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) ("It is axiomatic that the physical entry of the house is the chief evil which the wording of the Fourth Amendment is directed.").  In this case, however, officers did not search Bausby's residence until after a search warrant was obtained.  However, Bausby argues that his front yard, and in particular, where the motorcycle was located, should be deemed to be part of his residence.

Undoubtedly, "the Fourth Amendment protects the curtilage of a house." *United States v. Dunn*, 480 U.S. 294, 300 (1987).  However, the extent of curtilage is sometimes difficult to elucidate and, thus, the Supreme Court has reasoned that "the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *Id.*  Four factors are relevant to whether a particular area should be considered within the curtilage:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*Id.* at 301.  Bausby argues that his entire front yard was curtilage. The Court disagrees – at least insofar as the motorcycle is concerned.[4]

In analyzing the *Dunn* factors, the front yard area is in somewhat close proximity to the house. In addition, the area is enclosed albeit with a see-through chain-link fence.  *Compare*

---

[4]     The <u>shared</u> driveway where the stolen Oldsmobile Alero was found likewise is not curtilage. *Compare United States v. McCaster*, 193 F.3d 930, 933 (8th Cir.1999) (it is well-settled that there exists no "generalized expectation of privacy in the common areas of an apartment building").

*United States v. Tolar*, 268 F.3d 530, 532 (7th Cir. 2001) ("[A] chain link fence does little to assert a privacy interest (as opposed to a property interest) in details visible from outside the fence."). However, the last two factors weigh against a curtilage designation. The rationale for affording protection to curtilage is to honor a property owner's reasonable expectation of privacy. Placing a motorcycle in the front yard so that it is visible to public thoroughfares and placing a "For Sale" sign next to the motorcycle are not consistent with an expectation of privacy. Moreover, based on its credibility determination, the Court further concludes that the gate to the chain link fence was unlocked and Bausby had not posted a "No Trespassing" sign.[5] Under the facts the Court concludes that the area where the motorcycle was located did not constitute curtilage.

An illustrative recent case is *United States v. Brooks*, 645 F.3d 971 (8th Cir. 2011). In *Brooks*, law enforcement officers received information from a confidential informant that the defendant was selling drugs and guns from a basement apartment. The officers traveled to the site of the apartment building and noted that it was enclosed a chain link fence. From a public alley, officers could see through the fence and see the stair case that led to the basement apartment. Upon arriving at the apartment building, the officers entered through the unlocked gates to the chain link fence to look around the building. While the officers were walking around, they observed the defendant near the door to the basement holding a long object in a bag that appeared to be a weapon. The defendant attempted to flee but was apprehended and arrested

---

[5]     Bausby and his witnesses to varying degrees dispute these factual findings. It should be noted, however, that Bausby and witnesses, at best and if believed, merely establish a "No Trespassing" sign on a window of Bausby's house. Even if the Court found such testimony credible, it is not at all clear that such a sign on the residence effectively limits access into the front yard (*i.e.*, the "no Trespassing" sign was not on the fence itself or the gate to the fence).

as a felon in possession of a firearm. After his conviction, the defendant appealed to the Eighth

Circuit, arguing, in part, that the evidence against him should have been suppressed inasmuch as

"the officers unlawfully encroached upon the curtilage of his home to seize the firearm." *Id*. at

975. The court rejected the defendant's argument that the apartment building backyard and the

staircase where he was apprehended were curtilage.

      In reaching this conclusion, the *Brooks* court noted that:

> [T]he gates were open and unlocked at the time law enforcement
> initially approached the building. Additionally, the backyard and
> the staircase are visible from public areas, which is inconsistent
> with the notion that they would be treated as extensions of the
> home itself. Finally, there were no "no trespassing" signs or
> anything similar on the property.

*Id*. (*citing United States v. Reed*, 733 F.2d 492, 501 (8th Cir. 1984) (holding that the defendants

did not have a reasonable expectation of privacy where a parking lot was located in a

commercial area, adjacent to public streets on three sides and had a fenced gate that was

completely open). For similar reasons, the Court likewise concludes that the area where the

motorcycle was located did not constitute curtilage. Because the motorcycle was not within the

curtilage of the residence, the officers did not violate the Fourth Amendment in arriving at the

place from which the motorcycle's VIN could be seen in plain view.[6]

      Moreover, the Court believes that even a finding that the area where the motorcycle was

located, in fact, did constitute curtilage would not result in a different outcome herein. In that

---

[6]     The plain view doctrine allows an "'officer to seize evidence without a warrant
when (1) the officer does not violate the Fourth Amendment in arriving at the place from which
the evidence could be plainly viewed, (2) the object's incriminating character is immediately
apparent, and (3) the officer has a lawful right of access to the object itself.'" *United States v.
Wilson*, 565 F.3d 1059, 1064–65 (8th Cir. 2009) (*quoting United States v. Abumayyaleh*, 530
F.3d 641, 648–49 (8th Cir. 2008)).

regard, the Eighth Circuit has noted that "[w]here a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, provided that the intrusion upon one's privacy is limited." *United States v. Weston*, 443 F.3d 661, 667 (8th Cir. 2006). In this case, the Court believes that the officers where seeking to fulfill legitimate law enforcement objectives in entering through the unlocked chain link fence, attempting to talk to someone in the residence, and in checking the visible motorcycle VIN with the number provided by Haase for his stolen motorcycle. At the time they entered through the fence Haase had called the officers and reported seeing the motorcycle and had tentatively identified the motorcycle due to unique alterations that he had made to the bike before it was stolen. The actions of the officers were limited and restrained and designed to confirm or refute Haase's allegation with minimal privacy intrusion.

Bausby additionally argues that probable cause was lacking to support the issuance of the warrant in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). The Court disagrees. The role of a court reviewing a search warrant "is to ensure that the evidence as a whole provides a substantial basis for finding probable cause to support the issuance of the search warrant [and the] existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (*citations omitted*). *See also United States v. Leon*, 468 U.S. 897, 914 (1984) ("the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination" as to whether an affidavit establishes probable cause).

Reviewing the affidavit supporting the issuance of this search warrant,[7] the Court has no difficulty in concluding that the search warrant was issued with the requisite probable cause. To prevail on a *Franks* challenge to a search warrant application, a defendant must establish "that a false statement was included in the affidavit knowingly and intentionally or with reckless disregard for its truth, and that the affidavit's remaining content is insufficient to establish probable cause." *United States v. Roberson*, 439 F.3d 934, 939 (8th Cir. 2006). In addition, while *Franks* involved a false statement included in an affidavit, its reasoning has been extended to allow challenges to affidavits based on alleged deliberate omissions. *See, e.g.*, *United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir.1993); *United States v. Dennis*, 625 F.2d 782 (8th Cir.1980). To prevail on a *Franks* claim based on an omission of fact (which seems to be Bausby's primary claim), a defendant must prove (1) that facts were omitted with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, and (2) that the affidavit, if supplemented with the omitted information, would not have been sufficient to support a finding of probable cause. *United States v. Allen*, 297 F.3d 790, 795 (8th Cir.2002). Bausby has failed to meet this burden.

In this case, the application for the search warrant prepared by Det. Straubel provided in relevant part:

> On 6/22/2010, at about 1600 hours, the victim observed what he believed to be his stolen 1981 Kawasaki KZ1000 motorcycle parked in the front yard of 5444 Woodland. The victim reported to the police that the motorcycle had been stolen from Independence, Missouri, with the key in the ignition.
> On 6/22/2010, at about 1519 hours, Kansas City, Missouri, police officers

---

[7]    "When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir.1999).

were dispatched to 5444 Woodland, Kansas City, Jackson County, Missouri, in regard to a disturbance involving a stolen auto. Upon arrival officers thought they observed movement inside the residence of 5444 Woodland, however, nobody would respond to the door. Officers conducted a computer check of the motorcycle, 1981 Kawasaki KZ1000, VIN: JKAKZCK10BA001307, which responded as a stolen motorcycle taken from Independence, Missouri. The motorcycle did not have the victim's key in the ignition, in fact the ignition was missing from the motorcycle. Also observed on the property were numerous auto parts on the front porch and back yard area of the residence of 5444 Woodland, including two vehicles in the back yard and a stripped motorcycle, six vehicles were also observed on the shared driveway to the north of the residence. Two of the six vehicles in the driveway had no VIN on the dashboard of the vehicle. One of the vehicles, red Pontiac Firebird, appeared to have an altered VIN plate on the dashboard. A computer check of the 1999 Oldsmobile, Alero, brown in color, VIN: ?G3NF12E0XC403830, responded as a stolen auto taken from 35th and College, on 1/11/2010. The fifth vehicle in the driveway did not respond stolen, however, only the VIN on the dashboard of the vehicle was checked. A neighbor of the shared driveway, who lives at 5442 Woodland, contacted the police while they were at the scene. He stated that all of the vehicles in the driveway were Chris', including a red tow truck, except for a Cadillac which was at the end of the driveway. The neighbor was allowed to leave the scene in his Cadillac.

While officers had the scene surrounded, Chris C. Bausby, b/m, 6/15/1960, walked up towards the residence, 5444 Woodland. Officers arrested Bausby at the scene. A computer check of Bausby revealed him to have numerous previous arrests for property crime offenses.

The Court believes that even if the application had included language indicating that Bausby was asserting that he had paperwork to establish his legitimate ownership of all the vehicles on his property, probable cause to issue the search warrant would still have been present.[8]

Accordingly, it is

---

[8] Moreover, there is no evidence to support a finding that the officers involved omitted Bausby's contention with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading.

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Bausby's MOTION TO SUPPRESS EVIDENCE filed on June 6, 2011 (Doc. #27).

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

*/s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**